CLEAVENGER *v.* CASTLE.

CASTLE *v.* WAYNE CIRCUIT JUDGE.

1. MANDAMUS—DISMISSAL.
    Mandamus to compel trial court to set aside verdict and judgment and enter case on docket for trial is dismissed, in view of defendant's motion to enter judgment in sum to which it had been reduced by remittitur, and delay in bringing mandamus proceeding to hearing.

2. ACCORD AND SATISFACTION—PLEADING—SETTLEMENT AND DISMISSAL OF PREVIOUS SUIT.
    Defense of accord and satisfaction was properly held not available where not specially pleaded, as required by 3 Comp. Laws 1929, § 14128, and Michigan Court Rule No. 23, and especially where defendant denied that settlement of previous action was satisfaction of plaintiff's present claim, but insisted it was made to satisfy claim founded on extortion and blackmail.

3. BREACH OF MARRIAGE PROMISE—NO RECOVERY MAY BE HAD FOR BREACH OF VOID PROMISE.

Promise of marriage by defendant to plaintiff after marriage to another woman, of which plaintiff had knowledge, would be void, and no recovery could be had for its breach.

4. SAME—CONDUCT SUBSEQUENT TO ACCRUAL OF RIGHT OF ACTION NOT BAR TO RECOVERY.

If marriage contract had been entered into and breached by defendant, plaintiff's conduct subsequent thereto would not bar her right to recovery therefor.

5. TRIAL—ANSWERS TO SPECIAL QUESTIONS.

Answers to special questions submitted to jury, *held*, not inconsistent with general verdict rendered.

6. BREACH OF MARRIAGE PROMISE—PROCURING LICENSE TO MARRY ANOTHER NOT BREACH.

Defendant's procuring license to marry another woman was not in itself breach of contract to marry plaintiff.

7. TRIAL—STATEMENT OF EVIDENCE TO BE SUBMITTED.

Considerable latitude is allowed counsel in outlining to jury evidence to be submitted.

8. APPEAL AND ERROR—JURORS PRESUMED INTELLIGENT.

Jurors are presumed to be intelligent and to appreciate effect of court's sustaining objection to proffered testimony.

9. TRIAL—OFFERS OF TESTIMONY IN GOOD FAITH NOT REVERSIBLE ERROR.

It is only when it appears that remarks in opening statement as to testimony to be offered are not made in good faith, but are made for manifest purpose of creating prejudice and influencing jury, that they are deemed cause for reversal.

10. APPEAL AND ERROR—IMPROPER ARGUMENT OF COUNSEL.

Assignment of error on alleged improper argument of counsel which does not appear in bill of exceptions is not considered.

11. BREACH OF MARRIAGE PROMISE—GREAT WEIGHT OF EVIDENCE.

In action for breach of marriage promise, verdict for plaintiff, *held*, not against great weight of evidence.

12. APPEAL AND ERROR—ASSUMPTIONS—WEIGHT OF TESTIMONY.

Supreme Court may not assume that, in passing upon issue properly submitted by trial court, jury did not exercise their best judgment in weighing testimony.

13. BREACH OF MARRIAGE PROMISE—WEALTH OF DEFENDANT MAY BE
CONSIDERED.
    In action for breach of marriage promise, wealth of defendant
    is proper subject for consideration.

14. SAME—EXCESSIVE VERDICT.
    In action for breach of marriage promise, where there was
    evidence that defendant's assets, worth $2,400,000, were ac-
    cumulated from nucleus given him by plaintiff, judgment for
    $150,000, reduced by trial judge from verdict for $450,000,
    *held*, not so excessive, upon review of record, as to shock
    sense of justice and require further reduction by Supreme
    Court.
    WIEST and POTTER, JJ., dissenting.

Error to Wayne; Ferguson (Homer), J. Sub-
mitted April 8, 1931. (Docket No. 19, Calendar
No. 35,420.) Decided June 25, 1931. Rehearing
denied September 10, 1931.

Assumpsit by Bertha B. Cleavenger against John
H. Castle for breach of marriage promise. Judg-
ment for plaintiff. Defendant brings error. Af-
firmed.

Mandamus by John H. Castle to compel Homer
Ferguson, Wayne circuit judge, to set aside a ver-
dict and judgment and set the cause for trial. Sub-
mitted April 8, 1931. (Calendar No. 34,996.) Dis-
missed June 25, 1931.

*Wm. Henry Gallagher,* for plaintiff.
*Ralph B. Clark,* for defendant.

SHARPE, J. Plaintiff brought this action to re-
cover damages for an alleged breach of contract of
marriage. She had verdict for $450,000. Defend-
ant moved for a new trial, on the ground, among

others, that the damages awarded were excessive. The trial court entered the following order:

"The motion of the defendant, John H. Castle, for a new trial having come on to be heard, and the same having been argued by the attorneys for the respective parties, it is considered and ordered by the court now here that unless on or before February 19, 1930, the said plaintiff shall accept as a judgment against the said defendant the sum of one hundred and fifty thousand ($150,000) dollars, then a new trial herein shall be granted.

"It is further ordered that unless the said plaintiff remit the sum of three hundred thousand ($300,000) dollars from the verdict and judgment heretofore entered in said cause on or before the 19th day of February, 1930, a new trial herein shall be granted:"

Plaintiff's counsel filed a paper signed by her on which was written:

"Now comes the plaintiff in the above entitled cause and remits the sum of three hundred thousand dollars ($300,000) of the judgment heretofore entered herein, conditioned, however, upon the order granting new trial unless the plaintiff so remits not being reversed or modified by the Supreme Court."

Defendant's counsel soon thereafter moved that the verdict and judgment be set aside and that the "cause be entered upon the docket of the causes ready for trial in this court." The trial court declined to make such order, whereupon defendant filed in this court a petition for mandamus to compel such action on his part. An order to show cause was granted on April 7, 1930, and served upon the trial court on April 18th. He made answer thereto, which was filed in this court on May 6, 1930. The

printed record on such motion was filed on May 16, 1930. Defendant's brief in support of the motion was not filed until March 14, 1931. Plaintiff's brief was filed 10 days later. In the meantime, and on April 7, 1930, the same day the order to show cause was granted by this court, the defendant moved to enter judgment for plaintiff in the sum of $150,000, and such a judgment was entered. It is of this that defendant here seeks review by writ of error. In view of this action, taken on motion of defendant, and the delay in bringing the mandamus proceeding to a hearing in this court, and the settling of the bill of exceptions and its return to this court before such motion was brought on for hearing, we decline to pass upon the question presented in the motion, and it is dismissed.

Many errors alleged to have been committed on the trial are assigned. To discuss them intelligently, it will be necessary to review the testimony at some length.

These parties first met in the fall of 1917. The plaintiff at that time was operating an apartment building on Warren avenue in Detroit, and the defendant was in the employ of the Ford Motor Company and earning about $5 per day. Plaintiff testified that defendant made frequent calls upon her after their first meeting, and that after about six weeks' time he proposed marriage to her and she accepted. While defendant admitted that they were often together at that time, he denies the alleged engagement. In the spring of 1918, plaintiff gave up possession of the Warren avenue property and leased a rooming house on Cass avenue, which she operated until the spring of 1920. Defendant was drafted into the army in August, 1918. On his discharge, he returned to Detroit and roomed with

plaintiff until the property was sold in April, 1920. It is undisputed that during this time the parties had sexual relations with each other and that such relations continued until about the time of his marriage to Phyllis Linderman on March 11, 1925. It is plaintiff's claim that her consent to the first of such acts was procured by the defendant's promise to marry her and after she had consented thereto. She testified that she several times became pregnant and at defendant's request submitted to medical treatment which resulted in abortions, and that while living at Cass avenue she "prepared his lunches, mended his clothing, kept them in general repair, cooked his meals and did his laundry work."

In 1920 the defendant quit the employ of the Ford Motor Company and engaged in the real estate business. Plaintiff testified that at that time she gave him $1,800 to use in this business, taking no note or security therefor. A part of this money ($800) was the proceeds of a sale of her rooming house and a part money given her by her mother for investment. Defendant admitted the receipt of the $1,000. This money was afterwards returned to her. In this business he was successful. By the end of 1923 he was in possession of a very considerable income. Plaintiff testified that she then urged that they should be married, but that he put her off and suggested that she take a trip to Florida, which she did at his expense. He met her at the depot on her return, and took her to the Statler Hotel, where they occupied separate rooms for some time. In 1924 she took a trip to California at his expense.

He had first met his present wife in 1920. In 1924 she became begotten of child with him. Defendant joined plaintiff in California in February, 1925, but remained there only six days. He urged

her to extend her stay, but she returned to Detroit on March 15th. He again met her at the depot and took her to the Statler Hotel. Meanwhile, on March 11th, a marriage ceremony had been performed between the defendant and Miss Linderman at. Port Huron. This fact did not become public. In April, the defendant and his wife went to Europe, and returned in July.

During his absence, plaintiff retained an attorney and began suit for breach of promise. She testified that, in a long ride she took with defendant after his return, at his request, he told her that he had been tricked into his marriage with Miss Linderman, and that he had been advised by attorneys that it was illegal and could be annulled, but that it would take about six months to accomplish it and that he would then fulfill his marriage promise to her; that at his suggestion she took a room at the Book-Cadillac Hotel, and that while there ·he gave her presents from time to time. During this time defendant's wife was living with her mother.

In April, 1926, the suit begun by her attorney was discontinued. She further testified that she frequently reminded him of his promise to secure an annulment of his marriage, and that he put her off with assurances that he would do so. In March, 1927, she called at his attorney's office, and, as she claims, was informed that another child had been born to Mrs. Castle and that the defendant had no intention of returning to her. This action was begun a few days later. It appears that she thereafter tried to see the defendant; at times when he was with his wife; that she created a disturbance, and was taken into custody, convicted and placed upon probation, but upon a new trial was discharged.

All of these facts are not admitted by defendant. There was, however, sufficient testimony as to their

truth to present issues of fact for the jury. While the defendant admitted his intimacy with plaintiff before his marriage, and that he frequently saw her thereafter and continued to furnish her with money to live upon, he denied that he had ever promised to marry her or that there was any talk about an annulment of his marriage.

Plaintiff offered in evidence a statement filed by defendant with the bank in which he did business, showing the market value of his assets as of December 31, 1926, to be $2,400,000.

Counsel for defendant, on the first page of his brief, in accordance with the requirements of Michigan Court Rule No. 69, states that there are nine questions involved and fairly outlines each of them.

1. It is urged that the discontinuance of the action first begun, in consideration of a settlement claimed then to have been made, was a satisfaction of plaintiff's claim as here made. The trial court held that defendant had not specially pleaded an accord and satisfaction, as required by the statute (3 Comp. Laws 1929, § 14128) and by Michigan Court Rule No. 23. He also stated that defendant denied that the settlement was made for a breach of promise of marriage, but insisted that it was made to satisfy a claim founded on extortion and blackmail. His holding in this respect was justified by the record, and meets with our approval.

2. There was some doubt at first in the mind of the court as to the effect of the promise claimed to have been made by defendant to secure an annulment of his marriage and then marry the plaintiff, but such doubt was removed when he instructed the jury as follows:

"Any claimed promise of marriage by the defendant to the plaintiff, after his marriage to another woman was brought to the knowledge of the plain-

tiff, would be absolutely void, as a matter of law, and there could be no recovery of damages based upon such void promise. Neither could such promise be a reiteration of a former contract of marriage.''

3. It is insisted that plaintiff's claim in respect to the annulment did ''so taint entire contractual relation between the parties with fraud, illegality and immorality as to bar recovery by plaintiff.'' Assuming that she testified truthfully as to what occurred, the defendant succeeded in quieting her in the fit of passion she was in, when she learned of his marriage, by his promise to secure an annulment thereof and induced her to resume their former relations. But, if the marriage contract had been theretofore entered into, her right to damages for its breach was then complete and her after conduct in this respect would not bar her recovery thereof.

4. At the request of defendant's counsel, the court submitted the following special questions to the jury, which were answered by them as indicated:

1. ''Was there a binding contract of marriage between the plaintiff and the defendant in the month of November, 1917, conditioned for its consummation upon the defendant discharging his obligations to his mother and younger brothers and becoming financially able to provide a home for the plaintiff?'' Answer, ''No.''

2. ''Was the defendant, at the time he and the plaintiff were residing at the Louise avenue address in the year 1920, in such financial condition that he could support a wife and keep up a home?'' Answer, ''No.''

3. ''Was there a binding contract of marriage existing between the plaintiff and defendant on the 11th day of March, 1925?'' Answer, ''Yes.''

4. "Did the defendant breach this contract of marriage made in 1917 (if you find there was a contract of marriage made at that time) at the time he took out a marriage license and told plaintiff he was going to marry Hilota Schettler?" Answer, "No."

Discussing the effect of these answers, defendant's counsel says:

"The jury further found that there was no contract of marriage at all in November of 1917. The answer to these questions would naturally indicate that there was no legal contract between the parties and therefore the defendant was entitled to a verdict of, 'No cause of action' notwithstanding the verdict of the jury."

Counsel loses sight of the fact that the word "conditioned" was used in the first question. We find nothing in any of the answers inconsistent with the general verdict rendered. Procuring a license to marry another woman was not in itself a breach of his contract to marry the plaintiff.

5. Many errors are assigned upon what are claimed to have been prejudicial remarks of plaintiff's counsel in his opening statement and while examining witnesses. Considerable latitude is allowed counsel in outlining to the jury the evidence to be submitted. He cannot be expected to at all times anticipate the ruling of the court on proof which he thinks admissible. Jurors are presumed to be intelligent men and women and to appreciate the effect of the court's sustaining an objection to proffered testimony. It is only when it appears that such offers, statements, and remarks are not made in good faith, but are made for the manifest purpose of creating prejudice and influencing the jury, that they are deemed cause for reversal. Where objection is made, the trial court may usually be relied

on to caution the jury, if need be, and in extreme cases to reprimand counsel. In a hotly-contested case, such as this was, it is not always easy to determine whether such transgressions are due to the honest zeal of counsel in behalf of his client or to a deliberate attempt to mislead and influence the jury. In the instance most strongly relied on, the integrity of plaintiff's counsel was attacked, and we think unjustly, by opposing counsel. It resulted in a demonstration in the courtroom which met with a prompt reprimand on the part of the trial judge. Suffice to say, without more particular reference thereto, that in our opinion no reversible error is disclosed. "Jurors must be credited with intelligence." *Walz* v. *Peninsular Fire Ins. Co.*, 221 Mich. 326, 342.

Error is assigned upon improper argument of plaintiff's counsel to the jury. This argument does not appear in the bill of exceptions.

6. It is urged that the verdict was against the great weight of the evidence. In considering the question on the motion for a new trial, the court said:

"There was sufficient evidence before the jury from which they could find mutual promises of marriage and a breach of the same. Therefore, a cause of action existed."

This court is always reluctant to disagree with the trial court in decision of such a question, and we find no occasion to do so upon the record before us.

7. The jury rendered a verdict for $450,000. The judgment here reviewed is for but $150,000. Counsel for defendant insists that the verdict rendered by the jury "clearly establishes" the fact that they

were actuated by prejudice, passion, and sympathy in returning a verdict for plaintiff in any sum, and that, irrespective of the amount for which the final judgment was entered, a new trial should be granted. To return a verdict for plaintiff, the jury must have found that the parties agreed to marry each other and that such contract was breached by the defendant. The charge of the court was explicit and plain as to their duty in that respect. This issue was stressed by him at considerable length, and we cannot assume that in passing upon it the jury did not exercise their best judgment in weighing the testimony relative to it.

8. The question here presented to us is whether the amount for which the judgment was finally entered, $150,000, is so excessive as to impose upon this court the duty to require plaintiff to assent to its further reduction, or, should she decline to do so, to grant a new trial. As before stated, this judgment was entered on motion of the defendant after the plaintiff had filed a remission to that amount.

The trial court heard and saw the parties and their witnesses. He doubtless gave consideration to the claim of plaintiff that the money which she gave to defendant, as above stated, was the nucleus of the fortune he accumulated in the real estate business. There are many elements of the damages proper for consideration in such cases, which were no doubt urged by plaintiff's counsel in the trial court as they are in the brief filed in this court. They are enumerated and commented upon in the following cases: *Bennett* v. *Beam,* 42 Mich. 346 (36 Am. Rep. 442); *Vanderpool* v. *Richardson,* 52 Mich. 336; *Goddard* v. *Westcott,* 82 Mich. 180; *Rutter* v. *Collins,* 103 Mich. 143; *Houser* v. *Carmody,* 173 Mich. 121; *Jaskolski* v. *Morawski,* 178 Mich. 325.

"That the wealth of the defendant is a proper subject for consideration in such cases admits of no doubt." *Hatton* v. *Stott,* 220 Mich. 262, 267.

The trial court, in the exercise of his judicial discretion, reduced the verdict to $150,000. After a careful review of the record, we are unwilling to say that this amount is so large as "shocks one's sense of justice" (*Shepler* v. *Chamberlain,* 226 Mich. 112, 122 [33 A. L. R. 1232]), or that it imposes a duty upon this court as an appellate tribunal to make further reduction thereof.

The 9th of the "questions involved" relates to the motion which was disposed of in the first part of this opinion.

Finding no reversible error in the record, the judgment is affirmed.

Butzel, C. J., and Clark, McDonald, North, and Fead, JJ., concurred with Sharpe, J.

Wiest, J. (*dissenting*). I think the verdict for $450,000 so excessive, considering the relations, conduct, temperament, and sensibilities of the parties, as to evidence misjudgment to a degree requiring an unconditional new trial.

Adequate correction demands more than a remittitur of $300,000. The judgment for $150,000 is excessive and should be reversed and a new trial granted, with costs to defendant.

Potter, J., concurred with Wiest, J.