NEW ENGLAND MUTUAL LIFE INSURANCE CO. *v.* LeVEY.

1. INSURANCE—LIFE INSURANCE—FRAUD—WAIVER.
   Where life insurance company, after discovery of all facts in regard to insured's claimed fraud in failing to disclose fact that he had received treatment for boils at hospital, accepted payment of premiums, fraud, if any, was thereby waived.

2. SAME—CANCELLATION OF POLICY—WAIVER.
   Where insurance company, after writing letter to insured purporting to cancel policy on ground that it was procured by fraud, accepted payment of premiums, said attempted cancellation, if letter may be construed as notice of rescission, was waived.

3. WITNESSES—MEDICAL WITNESSES—FEES—ABUSE OF DISCRETION.
   Allowance of fees by trial court to medical witnesses, *held*, not abuse of discretion.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted June 7, 1933. (Docket No. 36, Calendar No. 37,234.) Decided August 29, 1933.

Bill by New England Mutual Life Insurance Company, a Massachusetts corporation, against Herbert L. LeVey to cancel supplemental agreements to a life insurance policy. Cross-bill by defendant against plaintiff to establish validity of said agreements and to recover instalments due thereon. Bill dismissed. Decree for defendant on cross-bill. Plaintiff appeals. Affirmed.

*Angell, Turner, Dyer & Meek,* for plaintiff.

*Casper C. Cutler,* for defendant.

Fead, J.   July 15, 1930, plaintiff issued to defendant a life insurance policy, annual premium $583, with supplemental agreements for waiver of premium and for income during total and permanent disability, premium $91.50, and double indemnity in case of death by accident, premium $17.50.   The life feature of the policy has become incontestable.   This bill is to cancel the supplemental agreements for alleged fraud in concealment of prior disease and medical treatment.   Defendant filed a cross-bill to establish the agreements as valid and to recover instalments due thereon.   Defendant had decree.

Defendant took sick November, 1930, and it is conceded he became totally disabled in January.   He had been treated at the university hospital at Ann Arbor for boils from August, 1929, to June, 1930, and (time not shown) had had an operation for hemorrhoids.   Neither was disclosed in his written application or medical inquiry signed by him, although he claims he told both the soliciting agent and the medical examiner of the treatments.   The fact of the treatments for boils, with name of attending physician, was communicated to plaintiff before the policy was issued, through report of its agent, after further interview with defendant, but the details of the treatment, symptoms, and diagnosis did not reach the home office.   The court held there was no fraud, and, if there was, plaintiff had waived it. The latter ground is decisive, and has the merit of shortening the opinion.

On February 2, 1931, defendant notified plaintiff of his disability and was advised to wait four months, as required by the policy, before making proof of claim.   He made the proof June 2d.   In the interim and afterward, with defendant's co-operation, plaintiff conducted a thorough investigation,

by inspection of the hospital records, interviews with defendant's physicians and his neighbors, and otherwise. The last item of the inquiry seems to have been a supplemental report which plaintiff's State agent, Mr. Utter, wrote would follow his letter of July 21st. On request of the company, with disclosure of its desire to avoid the liability, Mr. Utter had given personal attention to the matter.

August 7th, with full knowledge of the facts, plaintiff wrote defendant denying liability for the disability because defendant had failed to disclose to the medical examiner the fact that he had been under treatment in 1929 and 1930, he was not in good health at the date of the application, and the company believed his condition represented the progress of his prior disease. Plaintiff further reserved all legal defenses and right to base its declination upon any other existing ground. It said nothing about canceling the contract.

Utter was the general State agent of plaintiff, with duty and authority to collect premiums. Defendant's second premium was due July 15, 1931, with 31 days' grace for payment. August 14th, seven days after the company had denied liability, defendant paid at Utter's office $83.50 in cash, received credit for dividend of $109.50, and the next day executed three notes, one for $167 and two each for $166, dated July 15th and due in three, six, and nine months respectively, representing the balance of the total premium, including the premium on the disability agreement. The first two notes were paid in November and February. The last note was due April 15, 1932.

February 9th defendant commenced action at law to recover the accrued instalments for disability. March 2d plaintiff brought this suit, and a temporary injunction was issued to restrain prosecution

of the action at law.  April 4th defendant moved to dissolve the injunction because plaintiff had waived the alleged fraud in failing to tender back premiums collected and in collecting premiums after discovery of the facts.  April 15th plaintiff tendered to defendant the first year's premiums collected on the supplemental agreements.  It refused defendant's tender of payment of the last note due April 15th.

Plaintiff's claim is untenable that, because the remaining note unpaid was greater than the supplemental premiums for the second year, it had accepted no premium on such agreements after discovery of the fraud.  No differentiation among premiums was made in the receipts, notes, or notices of due dates of notes, including notice which Utter sent defendant of approaching maturity of the last note.  Each payment and note represented a proportionate amount of each feature of the policy.  The parties had no other idea of it, nor was other claim made until after litigation arose.

Utter said the handling of the premium was a "clerical mistake" of his clerks.  Regardless of the company's liability for the action of the clerks (14 R. C. L. p. 1160), the claim is not sustained by the facts.  The clerks followed routine in arranging the notes and in sending out notices to the insured of their due dates.  Mr. Utter knew the situation, as he was actively aiding the company in finding a defense.  The record does not show that the clerks were instructed to refuse supplemental premiums from defendant.  It does not show that Utter was instructed by the company to refuse such premiums.  It contains no basis for defense by claim of error of clerks.

Nor are we concerned with the authority of the general State agent or his clerks to waive anything.

The company itself accepted the premiums on the supplemental agreements because it received and kept not only the first instalment but also the portions represented by the three and six months' notes, which were paid.

Plaintiff's acceptance of the premiums after discovery of the facts was a waiver of the claimed fraud and of the attempted cancellation, if, indeed, its letter of August 7th may be construed as a notice of rescission. *Hilt* v. *Metropolitan Life Ins. Co.,* 110 Mich. 517; *Lord* v. *National Protective Society,* 129 Mich. 335; 37 C. J. p. 536; 14 R. C. L. pp. 1158, 1190.

Plaintiff complains of fees allowed by the court to medical witnesses, but we discover no abuse of discretion in that respect.

Decree affirmed, with costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.