DROUILLARD v METROPOLITAN LIFE INSURANCE COMPANY

Docket No. 45233. Submitted December 2, 1980, at Detroit.—Decided July 8, 1981. Leave to appeal applied for.

Arnold R. Drouillard brought an action against Metropolitan Life Insurance Company, alleging fraud, malicious prosecution, and intentional infliction of emotional distress arising out of defendant's denial of benefits under a life insurance policy covering Mildred Drouillard, plaintiff's deceased mother, based on an allegation of misrepresentation by Mrs. Drouillard in the application for insurance. Plaintiff had initially brought an action on the policy in district court which resulted in an award of the proceeds of the policy to plaintiff. Defendant had raised the affirmative defense of misrepresentation in that action which was the basis for plaintiff's claim of malicious prosecution in the circuit court action. Following trial in the circuit court, the jury returned a verdict of no cause of action. Plaintiff moved for a new trial, which motion was denied, Wayne Circuit Court, Sharon Tevis Finch, J. He appeals. *Held:*

1. The trial court properly refused to instruct the jury that

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 1113.

[2] 43 Am Jur 2d, Insurance § 235.

Insured's statement in application for life or health insurance or its reinstatement, that he is in good health, as absolute representation of, or mere statement of his good faith belief in, his good health. 26 ALR3d 1061.

[3] 43 Am Jur 2d, Insurance §§ 1156, 1162.

[4] 44 Am Jur 2d, Insurance § 1522.

[5] 61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers § 169.

Who may waive privilege of confidential communication to physician by person since deceased. 97 ALR2d 393.

[6] 52 Am Jur 2d, Malicious Prosecution §§ 70-73, 77 *et seq.*

[7] 52 Am Jur 2d, Malicious Prosecution §§ 128, 129, 134.

[8] 43 Am Jur 2d, Insurance § 194.

[9] 5 Am Jur 2d, Appeal and Error §§ 553, 623.

75 Am Jur 2d, Trial § 906.

[10] 29 Am Jur 2d, Evidence § 251 *et seq.*

[11] 5 Am Jur 2d, Appeal and Error §§ 882, 887.

defendant waived the right to contest a claim under the policy in failing to request that Mrs. Drouillard undergo a physical examination prior to issuing the policy. Defendant had no knowledge of the misrepresentation at that time and was not required to investigate Mrs. Drouillard's health.

2. The trial court properly refused to instruct the jury that defendant was estopped from denying the validity of the policy on the basis that it supplied an authorization form to plaintiff. The nature of the form could not have led plaintiff to believe that the policy was valid.

3. The trial court properly ruled that a beneficiary of a life insurance policy could waive a doctor-patient privilege which existed between a physician and a deceased insured.

4. The trial court properly ruled that the affirmative defense raised by defendant in the district court action did not constitute a malicious prosecution of plaintiff. It did not seek affirmative relief and attempted to state facts which would deprive plaintiff of recovery on his complaint.

5. The trial court properly allowed defendant to introduce proof that it had probable cause to assert its affirmative defense.

6. The trial court properly instructed the jury that an insurance company is not a fiduciary in relation to an insured or a beneficiary.

7. Plaintiff failed to raise an objection to the trial court's instruction on intentional infliction of emotional distress in the trial court. Appellate review is thus precluded, no manifest injustice having been shown.

8. The trial court, in its discretion, properly excluded evidence of defendant's total unpaid claims during the years surrounding the submission of plaintiff's claim on the ground that the evidence was irrelevant.

9. The trial court did not abuse its discretion in denying plaintiff's motion for a new trial. The record does not reveal that the jury's verdict was against the clear weight of the evidence.

10. The trial court did not err in instructing the jury on probable cause and the proceedings in the district court.

Affirmed.

1. INSURANCE — APPLICATIONS FOR INSURANCE — FRAUD — WAIVER — ESTOPPEL — STATUTES.

A false statement made by an applicant in an application for insurance may bar his right to recovery on the policy where

the statement materially affected the acceptance of the risk or the hazard assumed by the insurer; however, the insurer may be estopped from raising or be held to have waived the defense where the applicant communicates the truth to the insurer prior to the issuance of the policy or the insurer, with knowledge of the pertinent facts, acts or fails to act so as to induce the applicant to believe that he is entitled to rights under the policy (MCL 500.2218; MSA 24.12218).

2. INSURANCE — LIFE INSURANCE — APPLICATIONS FOR INSURANCE.

An insurer is entitled to rely upon representations by an applicant for life insurance relating to the nature of his health or his receipt of prior medical attention and treatment and is under no duty to question the applicant's veracity or to investigate the applicant's health.

3. INSURANCE — LIFE INSURANCE — DEFENSES — INCONTESTABILITY OF POLICIES — STATUTES.

An insurer may contest its liability under a policy of life insurance and assert any available defense against the insured including misrepresentation as to the insured's health within two years from the date of issue of the policy (MCL 500.4432; MSA 24.14432).

4. INSURANCE — CLAIMS OF LOSS — WAIVER — ESTOPPEL — STATUTES.

An insurer does not waive nor is it estopped from raising any defenses to liability under a policy of insurance by receiving or accepting a notice of claim or furnishing forms for proof of loss pursuant to the terms of the policy or by investigating the claim (MCL 500.2260; MSA 24.12260).

5. PHYSICIANS AND SURGEONS — DOCTOR-PATIENT PRIVILEGE — WAIVER — INSURANCE — STATUTES.

A patient's privilege against disclosure by his physician of information relating to professional treatment continues after his death, and a provision in an insurance policy which purports to create an anticipatory waiver of the privilege effective upon the insured's death is ineffective; however, the privilege may be waived by a personal representative of a deceased insured in an action on the policy (MCL 600.2157; MSA 27A.2157).

6. MALICIOUS PROSECUTION — AFFIRMATIVE DEFENSES — DEFENSES — STATUTES.

An assertion of an affirmative defense in an action does not give rise to a claim for malicious prosecution where the assertion does not seek affirmative relief from the plaintiff but attempts

to state facts which would deprive the plaintiff of recovery on his claim (MCL 600.2907; MSA 27A.2907).

7. MALICIOUS PROSECUTION — ACTIONS.

A plaintiff, in an action for malicious prosecution, has the burden of proving that the defendant did not have probable cause to initiate the original action, and where it is shown that the defendant placed all the facts before his counsel and acted upon his counsel's recommendation probable cause is established.

8. INSURANCE — FIDUCIARY RELATIONSHIPS.

Generally, a fiduciary relationship between an insurer and an insured or a beneficiary does not arise from a contract of insurance.

9. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION — COURT RULES.

Failure to raise an objection to a jury instruction in the trial court precludes appellate review absent manifest injustice (GCR 1963, 516.2).

10. EVIDENCE — RELEVANCY — WORDS AND PHRASES — APPEAL — RULES OF EVIDENCE.

Relevant evidence is evidence which tends to make the existence of any fact which is of consequence to the determination of an action more or less probable; such evidence may be excluded by a trial court, in its discretion, where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading of the jury, and on appeal the trial court's exercise of discretion will be affirmed absent manifest abuse (MRE 401, 403).

11. NEW TRIAL — APPEAL — COURT RULES.

A trial court, in its discretion, may grant a new trial where the verdict is against the great weight of the evidence, and on appeal a denial of a motion for a new trial will not be reversed unless the verdict was against the overwhelming weight of the evidence (GCR 1963, 527.1[5]).

*Robert E. Butcher,* for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Philip M. Frost* and *David R. Bruegel),* for defendant.

Before: D. C. RILEY, P.J., and D. E. HOLBROOK, JR., and M. B. BREIGHNER,* JJ.

D. C. RILEY, P.J. Plaintiff commenced suit in Wayne County Circuit Court alleging fraud, malicious prosecution, and intentional infliction of emotional distress. These claims arose following a dispute over an insurance policy issued by defendant and covering the life of plaintiff's mother. A lengthy jury trial culminated in a verdict of no cause of action. Plaintiff's motion for a new trial was denied on April 27, 1979, and he appeals as of right.

On September 25, 1972, plaintiff's mother, Mildred Drouillard, applied for an endowment insurance policy with defendant. The policy, having a face value of $1,000, was issued on November 1, 1972, and named plaintiff as its beneficiary. At the time at which she applied for the policy, Mrs. Drouillard signed an authorization form permitting "any physician, hospital, clinic or insurance company" to furnish defendant with medical information. Mrs. Drouillard subsequently died on April 28, 1973.

Plaintiff was appointed executor of Mrs. Drouillard's estate and surrendered the policy in question to defendant for payment. Defendant denied liability on the policy on June 26, 1973, claiming that Mrs. Drouillard failed to admit in her application past treatment for serious health problems. A representative of defendant insurance company indicated that the application would not otherwise have been approved but for the "misrepresentation".

In October, 1973, plaintiff commenced suit on the policy in district court. Defendant filed an

---

* Circuit judge, sitting on the Court of Appeals by assignment.

answer and affirmative defense, alleging that the policy was void because of Mrs. Drouillard's misrepresentation. Following a bench trial, the district court judge awarded plaintiff the value of the insurance policy, plus interest and costs. The judge considered defendant to have been negligent in failing to have investigated initially the state of Mrs. Drouillard's health.

Plaintiff commenced the instant suit shortly thereafter. At trial plaintiff contended that (1) defendant's agent, Stephen Manley, fraudulently obtained plaintiff's authorization to inspect decedent's health records, (2) the fraud and defendant's claim that decedent misrepresented her health constituted an intentional infliction of emotional distress upon plaintiff, and (3) defendant maliciously prosecuted plaintiff by asserting an affirmative defense in the district court action. Plaintiff has raised a plethora of alleged legal errors on appeal which we shall consider in turn.

I

Plaintiff first contends that the trial court erred in refusing to instruct the jury that defendant waived the right to contest the policy by issuing the policy without requesting a physical examination of Mrs. Drouillard and without otherwise investigating the state of her health. Plaintiff's theory was that defendant could have uncovered any misrepresentations by the insured with an earlier investigation and that defendant thereby elected not to hold the insured to those representations by not immediately investigating.

Pursuant to statute,[1] a false statement in an application for insurance may bar the right to

---

[1] MCL 500.2218; MSA 24.12218.

recovery if it materially affected either the acceptance of the risk or the hazard assumed by the insurer. As plaintiff points out, the doctrine of estoppel or waiver may be asserted by the insured in certain instances to estop an insurer from denying liability on a policy. For example, fraud is waived when the truth is communicated to the insurer before the policy is actually issued. *New England Mutual Life Ins Co v LeVey*, 264 Mich 282; 249 NW 854 (1933). In the context of misrepresentation of an insurance contract, waiver occurs when the insurer, with knowledge of pertinent facts, acts or fails to act so as to induce the insured to believe himself entitled to rights under the policy. See 14 Callaghan's Michigan Civil Jurisprudence, Insurance, §§ 348-349, pp 388-390.

Plaintiff would have us greatly expand the waiver doctrine by removing the element of knowledge. According to plaintiff, waiver occurs whenever an insurer has the opportunity to investigate an insured's health but does not. Following this reasoning, whether defendant was aware of Mrs. Drouillard's health problems or put on notice that they existed would be irrelevant.

We reject plaintiff's contention. Unless put on notice or apprised of special facts, an insurer is under no duty to investigate an applicant's health.

"As a general rule, an insurer is entitled to rely upon representations as to the applicant's health and prior medical attention and treatment and is not under any duty to question his veracity." 7 Couch on Insurance, 2d, § 37.250, p 583.

In addition, the Michigan incontestability statute[2]

---

[2] MCL 500.4432; MSA 24.14432 mandates that all life insurance policies must provide that they shall be incontestable after two years from the date of issue:

"There shall be a provision that the policy shall be incontestable

recognizes that an insurer has the right, within the statutorily prescribed time, to assert any available defense against the insured. The fact that an insurer may raise the issue of misrepresentation as to health within two years from the date on which the policy is issued conclusively refutes plaintiff's contention.

## II

Following the insured's death, defendant obtained plaintiff's authorization to inspect the insured's medical records. Plaintiff contends that the signing of the authorization form induced him to believe that the policy would be considered valid. He argues that the trial court erred in refusing to instruct the jury that defendant was estopped from denying the validity of the policy after its agent, Stephen Manley, obtained plaintiff's signature on the authorization form.

We reject this argument. We fail to see how the tendering of an authorization form for execution could constitute a representation that an insurance policy is valid. To the contrary, the very nature of such a form implies that an investigation may be undertaken and that payment under the policy may hinge on the outcome of that investigation. In addition, by statute in Michigan:[3]

"a life or disability insurance company does not incur

after 2 years from its date of issue, except for nonpayment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war."

[3] MCL 500.2260; MSA 24.12260 provides as follows:

"The acknowledgement by any insurer of the receipt of notice given under any life or disability insurance policy or the furnishing of forms for filing proofs of loss, or the acceptance of such proofs, or the investigation of any claim thereunder shall not operate as a waiver of any of the rights of the insurer in defense of any claim arising under such policy."

the penalty of waiver or estoppel of defenses against a claim under a policy by receipt or acceptance of notice under the terms of the policy, *or by the investigation of the claim."* 14 Mich Law & Practice, Insurance, § 393, p 271.

## III

Plaintiff's next contention is that the trial court erred in ruling that a life insurance beneficiary may waive the doctor-patient privilege of a deceased insured. In Michigan, the doctor-patient privilege exists pursuant to statute.[4]

Although the privilege continues in effect after the patient's death and although an insurance policy which purports to create an anticipatory waiver of the privilege to become effective at the insured's death is ineffective, *Gilchrist v Mystic Workers of the World,* 188 Mich 466; 154 NW 575 (1915), it is nevertheless true that the privilege may be waived by a personal representative of the deceased. *New York Life Ins Co v Newman,* 311

---

[4] MCL 600.2157; MSA 27A.2157 provides as follows:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon: Provided, however, That in case such patient shall bring an action against any defendant to recover for any personal injuries, or for any malpractice, if such plaintiff shall produce any physician as a witness in his own behalf, who has treated him for such injury, or for any disease or condition, with reference to which such malpractice is alleged, he shall be deemed to have waived the privilege hereinbefore provided for, as to any or all other physicians, who may have treated him for such injuries, disease or condition: Provided further, That after the decease of such patient, in a contest upon the question of admitting the will of such patient to probate, the heirs at law of such patient, whether proponents or contestants of his will, shall be deemed to be personal representatives of such deceased patient for the purpose of waiving the privilege hereinbefore created."

Mich 368; 18 NW2d 859 (1945). In the context of insurance disputes:

"[t]he view generally taken is that the privilege as to communications between a physician and the insured may be waived by the beneficiary in an action on the policy or certificate of insurance." 19 Couch on Insurance, 2d, § 79:63, p 440.

This is also the rule adhered to in Michigan. *Johnson v Fidelity & Casualty Co of New York*, 184 Mich 406, 411-412; 151 NW 593 (1915).

Plaintiff attempts to distinguish *Johnson* on the basis that there the waiver occurred during trial while in the instant case the waiver occurred prior to trial. We have found no case law to support the notion that judicial supervision is necessary to effectuate a waiver. To the contrary, most of the reported cases have dealt with waiver prior to trial, and the practice has been approved. See *Newman, supra.* See also cases collected at Couch, *supra,* § 79:63, fn 2, pp 440-441. We elect to adhere to this well-accepted rule. Waiver in such cases effectuates concepts of judicial economy since the practical result will often be settlements in lieu of trials. In addition, adopting plaintiff's position would further only marginally, if at all, the purpose of the privilege, which is to encourage free discussion between doctors and their patients, while at the same time it would tend to encourage the perpetration of frauds upon insurance carriers. We, therefore, affirm the lower court's ruling that plaintiff's pretrial waiver is valid.

## IV

In the district court suit, the defendant answered and defended the action by asserting the

affirmative defense that the insured had not presented all relevant medical information in her application for insurance. During trial in the instant suit, plaintiff contended that defendant "maliciously prosecuted" him by its assertion of the affirmative defense. The lower court ruled that such a cause of action could not be predicated on the defendant's prior assertion of an affirmative defense. Plaintiff attacks this ruling as being erroneous.

In Michigan, malicious prosecution is both a common-law and statutory action.[5] The language of the statute requires that the tortfeasor must have "in any way proceeded against [the tort victim], by any process or civil or criminal action * * *". The phrase "proceeded against" would seem to require that the tortfeasor actually initiate an action. By asserting its affirmative defense in the district court, defendant neither instituted nor continued a proceeding against plaintiff. See *Wilson v Yono,* 65 Mich App 441; 237 NW2d 494 (1975). Although we have found cases from other jurisdictions permitting actions based on malicious counterclaims or cross-claims, we have found none based on the assertion of affirmative defenses.[6]

---

[5] MCL 600.2907; MSA 27A.2907 describes both the tort and misdemeanor of malicious prosecution:

"Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the county jail for a term not exceeding 6 months."

[6] "Aside from cases involving counterclaims, the success of mali-

Plaintiff's contention that defendant's affirmative defense can be reframed as a counterclaim is without merit. The pleadings did not seek affirmative relief from plaintiff but attempted to state facts which would deprive plaintiff recovery on his complaint. We affirm the trial court's ruling.

V

Plaintiff next assigns as error the trial court's decision to permit defendant to introduce proof that it had probable cause in asserting the affirmative defense and in submitting the probable cause issue to the jury. Plaintiff further contends that defendant's failure to raise the defense of probable cause in its pleadings should have precluded defendant from offering testimony on the issue at trial.

Lack of probable cause is an element of malicious prosecution which must be pled by the plaintiff. *Roblyer v Hoyt,* 343 Mich 431; 72 NW2d 126 (1955). Thus, the burden of proof is on plaintiff to show that probable cause did not exist. See *Ringo*

cious prosecution actions, or their equivalents, against persons who in one way or another were defendants in the earlier litigation appear to have depended on how 'defensive,' as distinguished from offensive, the court viewed the defendant's wrongful maneuvers as being, or on whether it considered them to be 'defensive' at all for present purposes. Thus, in situations in which the wrong complained of was the defendant's merely 'defending,' in general, a suit brought against him by the plaintiff, or his interposing 'affirmative defenses,' recovery for malicious prosecution has been denied.

* * *

"Cases in which the defendant's alleged wrongful actions consisted of the wrongful filing of a counterclaim or similar action are very few, but they may be seen as standing on a different footing from the situations discussed up to this point. By definition, a counterclaim by a defendant seeks some sort of affirmative relief back against the plaintiff, whereas most other tactics used by a defendant do not, and on this basis it has been held that the filing of a counterclaim maliciously and without probable cause may be the basis for an action for malicious prosecution." Anno: *May action for malicious prosecution be predicated on defense or counterclaim in civil suit,* 65 ALR3d 901, 907.

*v Richardson,* 88 Mich App 684; 278 NW2d 717 (1979). Plaintiff's claim that defendant had to plead probable cause to notify plaintiff that it was in issue is, therefore, without merit.

Plaintiff specifically complains of the instruction that probable cause could be shown by defendant's consultation with and reliance upon counsel. However, this Court reiterated in *Leeseberg v Builders Plumbing Supply Co,* 6 Mich App 321, 328-329; 149 NW2d 263 (1967), that proof that a malicious prosecution defendant placed all the facts before his counsel and acted upon his opinion establishes probable cause.

We further reject plaintiff's contention that the evidence offered during trial conclusively established that defendant made inadequate consultation with counsel. There was a good deal of testimony elicited during trial concerning this point, and since the burden was on plaintiff to show lack of probable cause it was entirely appropriate to allow the jury to consider the issue. *Ringo, supra.*

## VI

Plaintiff objects to the trial court's instruction that an insurance company is not a fiduciary to an insured or to a beneficiary. The court instructed the jury as follows:

> "I instruct you as a matter of law that the relationship between an insurance company and a beneficiary, or between an insurance company and the insured, is what the law calls an arm's length relationship."

Couch has described the relationship between . the insurer and insured as follows:

> "As a general rule, the relation between the parties

to a contract of insurance is that of debtor and creditor; that is, of one contracting party to another contracting party, rather than of trustee and *cestui que trust* * * *." 3 Couch on Insurance, 2d, § 23:11, p 11.

"However, insurance policies are contracts of the utmost good faith and must be administered and performed as such by the insurer." *Id.,* 1980 Supp, p 7.

Plaintiff does not cite, nor have we found, any Michigan cases that impose a fiduciary duty upon an insurer. A recent federal case, *Bolden v John Hancock Mutual Life Ins Co,* 422 F Supp 28, 31-32 (ED Mich, 1976), applying Michigan law, held that a fiduciary relationship does not exist:

" 'There is, however, even after loss, a relationship of trust and confidence between insurer and insured, as distinguished from the existence of a formal trust, which the court will recognize as sufficient to permit fraud to be predicated upon a misrepresentation * * *.' "

In the instant case, the court *did* instruct on the tort of fraud based on defendant's alleged misrepresentations to plaintiff. We conclude that the court's instruction that the parties stood at arm's length was correct. There is ample authority for the court's instruction that a fiduciary relationship did not exist and that the parties were related merely as two parties to a contract. See also 2 Appleman, Insurance Law & Practice, § 921, p 512.

## VII

Plaintiff initially objected to defendant's suggested instruction on intentional infliction of emotional distress. However, a compromise was reached, and plaintiff's counsel ultimately stated that he had no objection to the instruction. A

party may not claim instructional error unless he makes a timely and specific objection. GCR 1963, 516.2. Appellate review is precluded absent manifest injustice. *Howell v Outer Drive Hospital,* 66 Mich App 142; 238 NW2d 553 (1975). Our review of the record, instructions, and briefs reveals no manifest injustice.

## VIII

Next, plaintiff assigns as error the trial judge's ruling to exclude evidence proffered by plaintiff concerning the amount of money made annually by defendant through allegedly improper claims procedures.[7] Plaintiff sought to introduce these figures to show that defendant had a motivation to defraud. The evidence was ruled inadmissible on relevancy grounds.

Relevancy is determined by the trial court, whose exercise of discretion is to be affirmed unless an abuse is manifest. *Birou v Thompson-Brown Co,* 67 Mich App 502; 241 NW2d 265 (1976). Relevant evidence is evidence tending to make the existence of any fact which is of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. MRE 403.

On the record before us, we cannot say that the court abused its discretion. The evidence was not material to plaintiff's policy claim, which was valued at only $1,000. Only that amount was at

[7] Before trial, plaintiff discovered through interrogatories that defendant estimated the dollar amount of its unpaid claims for the years 1971, 1972, and 1973 to be $2,207,356, $2,758,318 and $2,574,723, respectively.

stake in defendant's denial for there was no evidence of a connection between plaintiff's claim and any others. Introduction of the figures would have implied, to defendant's prejudice, that defendant acted improperly in all of its other claim denials. The evidence was correctly excluded.

## IX

Plaintiff asserts that the trial court erred in denying his motion for a new trial over his objection that the verdict was against the great weight of the evidence.

A new trial may be granted where the verdict rendered is against the great weight of the evidence, GCR 1963, 527.1(5). The grant or denial of such a motion is within the sound discretion of the trial court. *Isom v Farrugia,* 63 Mich App 351, 355; 234 NW2d 520 (1975). The test on appellate review is whether the verdict was against the overwhelming weight of the evidence. *Id.* Deference is afforded the trial judge who, having heard the witnesses, is uniquely qualified to judge their credibility and mental capacity. *Termaat v Bohn Aluminum & Brass Co,* 362 Mich 598, 602; 107 NW2d 783 (1961).

It does not appear that the verdict was against the clear weight of the evidence. Plaintiff's most viable claim was his assertion that defendant intentionally inflicted emotional distress by misrepresentation, that is, by "duping" plaintiff into signing the authorization form. A review of the record, however, does not leave one with the impression that the great weight of the evidence reveals any misrepresentation. Both defendant's agent, Manley, and plaintiff testified that plaintiff was given the option of not signing the form, although Manley had indicated previously that the

form was required. Plaintiff acknowledged that he read the form, understood its purpose, and was aware that his mother's medical records could not be examined without the form. Plaintiff had indicated previously that he was employed at the middle management level at Blue Cross-Blue Shield of Michigan. In conclusion, plaintiff's claim was not supported by the clear weight of the evidence.

X

Finally, plaintiff assigns error to certain jury instructions which described the district court proceedings and which instructed on probable cause, asserting that they allowed the jury to infer that Mrs. Drouillard indeed had made misrepresentations on her insurance application. Our reading of the instruction reveals no error. It does not indicate that the jury was called upon to make a judgment one way or the other with regard to Mrs. Drouillard's application representations.

Affirmed.

Costs to defendant-appellee.