*In re* ELLIS ESTATE

Docket No. 75491. Submitted January 22, 1985, at Detroit.—Decided June 4, 1985.

A purported last will and testament of William B. Ellis, deceased, was found by a jury to be invalid because the testator lacked the requisite testamentary capacity at the time he executed the will, Wayne County Probate Court, Ernest C. Boehm, J. The proponent, Patricia A. Ellis Cornelious, appealed, alleging that the misconduct of the trial counsel for the contestant of the will denied her a fair trial. *Held:*

1. Counsel did not act improperly by informing the jury during voir dire of the witnesses he intended to call.

2. Counsel indicated in his opening statement that he intended to prove certain facts through the testimony of three witnesses. The fact that those witnesses' testimony was later ruled to be inadmissible does not create impropriety out of counsel's stated intentions.

3. The contestant's counsel's repeated attempts to introduce evidence already ruled to be inadmissible, while not condoned, were not so improper as to influence the result of the case. The alleged improprieties comprised a relatively small part of the proceedings and much of the discussion concerning them took place out of the jury's hearing. Furthermore, the jury was properly instructed regarding the evidence they were allowed to consider.

4. Counsel did not act improperly by referring to Cornelious's invocation of the Fifth Amendment privilege against self-incrimination at her deposition. While the privilege is available to witnesses in a civil proceeding as well as in a criminal

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 624-627.

[2] 75 Am Jur 2d, Trial § 202 *et seq.*

Propriety and prejudicial effect of reference by plaintiff's counsel, in jury trial of personal injuries or death action, to amount of damages claimed or expected by his client. 14 ALR3d 541.

[3, 4] 81 Am Jur 2d, Witnesses §§ 30-68.

Admissibility, in civil action, of confession or admission which could not be used against party in criminal prosecution because obtained by improper police methods. 43 ALR3d 1375.

proceeding, the negative inferences which could be drawn from the witness's silence are not precluded from a jury's consideration where the privilege is claimed by a party to a civil cause.

5. Appellant's allegations that jury instructions were erroneous were not preserved for appeal.

Affirmed.

1. APPEAL — ATTORNEY'S CONDUCT — STANDARD OF REVIEW.

The Court of Appeals, when reviewing an allegation of error because of the improper conduct of an attorney at trial, should first determine whether the claimed error was harmless; if not, the court must inquire whether the error was properly preserved by objection and request for a jury instruction or motion for mistrial, in which case there is a right to appellate review; if not so preserved, a new trial should nevertheless be ordered if the claimed error may have caused the result or played too large a part in the result and may have denied a party a fair trial.

2. TRIAL — ARGUMENT OF COUNSEL — EVIDENCE.

Counsel may not refer in opening statement to clearly inadmissible evidence, but error requiring reversal is not established where matters asserted in the opening statement cannot be proven under the rules of evidence so long as counsel's references were made in good faith.

3. TRIAL — PRIVILEGE AGAINST SELF-INCRIMINATION — CIVIL CASE.

The constitutional privilege against self-incrimination applies in a civil as well as a criminal proceeding with regard to evidence which might subject a witness to criminal prosecution.

4. TRIAL — PRIVILEGE AGAINST SELF-INCRIMINATION — NEGATIVE INFERENCES — CIVIL CASE.

The negative inferences which can be drawn by a jury from a witness's silence, while impermissible in a criminal case, are not precluded where the Fifth Amendment privilege against self-incrimination is claimed by a party in a civil cause.

*James E. McCarthy,* for appellant.

*Philip J. Mabarak,* for appellee.

Before: HOOD, P.J., and WAHLS and J. T. KALLMAN,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. The proponent of a document purported to be the last will and testament of William B. Ellis appeals the decision of a Wayne County Probate Court jury in a will contest. The jury found the will invalid because the testator lacked the requisite testamentary capacity at the time he executed the will.

The proponent of the will is the grandniece of the testator. She testified that upon the request of her father, the testator's nephew, she dropped off her father and the testator at the office of Beatrice Johnson, a real estate broker, and returned for them approximately two hours later. She stated that she was not informed of the purpose of the visit and was not aware that a will had been executed until she was contacted by her attorney following the testator's death. The proponent acknowledged that she had known Mrs. Johnson, a former employer of hers, for many years and maintained regular contact with her. According to proponent, the testator was able to converse intelligently and was not incompetent on the evening the will was executed.

Beatrice Johnson testified on behalf of proponent. Mrs. Johnson is a real estate broker and had drafted approximately 100 simple wills. According to Mrs. Johnson, the testator had telephoned and made an appointment with her approximately a week prior to the meeting. When he came to her office on November 6, 1979, Mrs. Johnson drafted the will according to the testator's instructions, naming as the beneficiaries Inez Hill, Roosevelt Monk and the proponent, whom the testator described to her as his "favorite niece".

According to Mrs. Johnson, the testator was competent on the date the will was executed. She denied that the proponent was present when the will was executed or that she and proponent had

discussed the existence of the will. Mrs. Johnson further stated that proponent's father did not comment on any of the provisions of the will although he was present during the execution.

The contestant is the sister of the testator. She testified that she maintained regular telephone contact with her brother and noticed a change beginning in him in 1974. He became forgetful, his conversations were rambling and at times incoherent and he would contradict himself. She stated that this condition became progressively worse.

She testified that, on the day following the execution of the will, the testator called her and stated that the proponent had taken him to her friend's house, asked him many questions, and made him sign a paper, then put the paper in her purse. He asked the contestant to retrieve the paper from proponent. The contestant asked him why he would sign the paper if he didn't know what he had signed. The testator explained that he didn't feel well at the time and wanted to go home.

Woodrow Berry and Roosevelt Monk lived in the same building with the testator and were his friends. Monk testified that he had almost daily contact with the testator from the time of the will's execution until the time of the testator's death. Berry had almost daily contact with him until approximately a year before the will was executed. According to both witnesses, the testator was forgetful, would lose his train of thought and needed help in keeping track of his own financial affairs. Both men stated that the testator's mental condition seemed to worsen as time went by.

The trial court did not allow Dr. Paul Dwaihy to testify on behalf of the contestant regarding the issue of the testator's senility. Nor did it allow Thomas Northrup, a National Bank of Detroit

representative, to testify concerning transactions in the estate account.

Proponent contends on appeal that the misconduct of contestant's trial counsel denied her a fair trial. This argument is based upon remarks made during counsel's opening statement, counsel's continuous attempts to interject inadmissible evidence at trial, and alleged improprieties during closing argument. While in many instances objections to counsel's conduct were made and sustained, other alleged improprieties were uncontested. Further, proponent did not request curative instructions or move for a mistrial.

In reviewing proponent's argument, we follow the procedure set forth by the Supreme Court in *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 102-103; 330 NW2d 638 (1982):

"When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action." (Footnotes omitted.)

In the case *sub judice,* some of the alleged errors were not curable, others curable, and still others not error at all. We discuss each category of error

raised on appeal in order to give guidance to both bench and bar.

First, we note that no error occurred when contestant's counsel informed the jury during voir dire of the witnesses he intended to call. This was done in response to the trial court's request in order to determine whether any of the jurors were acquainted with the witnesses.

Nor was it error for counsel to indicate in his opening statement that he intended to prove by the testimony of a doctor that the testator was senile when he executed the will; through the testimony of an attorney, what an attorney would do to draw a will for a client; and through the testimony of a bank representative, that the proponent used funds of the estate for her own personal use while she was acting as the estate's personal representative. Counsel is entitled during opening argument to "make a full and fair statement of his case and the facts he intends to prove". GCR 1963, 507.1. While counsel is not allowed to refer to clearly inadmissible evidence, reversible error is not established where matters asserted in the opening statement cannot be proven under the rules of evidence so long as counsel's references were made in good faith. *Prentis v Bates,* 93 Mich 234; 53 NW 153 (1892). Counsel cannot be expected to anticipate at all times the ruling of the court on evidence he thinks admissible. *Cleavenger v Castle,* 255 Mich 66, 75; 237 NW 542 (1931). In the case at bar, the fact that the testimony of certain witnesses was later ruled inadmissible at trial does not create error out of counsel's stated intentions during opening arguments to call these witnesses.

The second category of alleged improprieties concerns counsel's persistent attempts to interject evidence ruled inadmissible by the trial court. Proponent refers to counsel's attempts to intro-

duce evidence of events subsequent to the death of the testator after the trial court ruled that these matters were not relevant to the testator's capacity at the time of the will's execution. Proponent also raises as error counsel's numerous attempts to elicit an opinion on the testator's capacity to make a will in spite of the court's prior ruling that such attempts were improper.

This Court does not condone such practices of counsel. There is the danger that these repeated attempts to introduce evidence already ruled inadmissible and the resultant objections might present an appearance of "brow-beating" and cause the jury to sympathize with counsel. There is also the danger that counsel's unanswered questions, through innuendo, may be inherently prejudical.

We are satisfied here, however, that counsel did not purposely indulge in such conduct to create an appearance of "brow-beating" and that his unanswered questions did not influence the result of the case. The alleged improprieties comprise a relatively small part of the proceedings and much of the discussion concerning them took place out of the jury's hearing. As the Supreme Court stated in *Cleavenger v Castle, supra,* pp 75-76:

"Jurors are presumed to be intelligent men and women and to appreciate the effect of the court's sustaining an objection to proffered testimony. It is only when it appears that such offers, statements, and remarks are not made in good faith, but are made for the manifest purpose of creating prejudice and influencing the jury, that they are deemed cause for reversal. Where objection is made, the trial court may usually be relied on to caution the jury, if need be, and in extreme cases to reprimand counsel. In a hotly-contested case, such as this was, it is not always easy to determine whether such transgressions are due to the honest zeal of counsel in behalf of his client or to a deliberate

attempt to mislead and influence the jury. * * * 'Jurors must be credited with intelligence.' " (Citations omitted.)

The final category of alleged error concerns counsel's reference to proponent's invocation at her deposition of the Fifth Amendment in response to virtually every question by opposing counsel. During cross-examination of proponent at trial, contestant's counsel sought to impeach proponent's explanation that she had invoked the Fifth Amendment at the deposition because her attorney was not present. The trial court sustained counsel's objection to this line of questioning. However, during his closing argument, contestant's counsel argued that proponent had invoked the Fifth Amendment because she believed her answers would incriminate her. Opposing counsel did not object.

The constitutional provisions regarding the privilege against self-incrimination apply in a civil as well as a criminal proceeding to evidence which might subject the witness to criminal prosecution. *Berney v Volk,* 341 Mich 647, 651; 67 NW2d 801 (1955); *In the Matter of Richard Baker,* 117 Mich App 591, 597; 324 NW2d 91 (1982), *lv den* 417 Mich 973 (1983); *Lefkowitz v Turley,* 414 US 70; 94 S Ct 316; 38 L Ed 2d 274 (1973).

While counsel's references to the negative inferences which could be drawn from proponent's silence would have been impermissible in a criminal case, the Fifth Amendment "does not preclude the inference where the privilege is claimed by a *party to a civil cause". Baxter v Palmigiano,* 425 US 308; 96 S Ct 1551; 47 L Ed 2d 810 (1976), citing 8 Wigmore, Evidence, 439 (McNaughton rev, 1961) (emphasis in *Baxter).* In the case at bar, therefore, it was not error for counsel to argue this inference in his closing statement.

Having reviewed the assigned errors on appeal, we find that only counsel's repeated attempts to introduce evidence already ruled inadmissible constituted err. We note, however, that the trial court properly instructed the jury that their consideration was to be limited to the events surrounding the execution of the will, that they were not to consider the reasons for the court's rulings or evidence which was not admitted, and that the jurors were not to consider the court's rulings, conduct or remarks as indicative of the court's opinion on the evidence. We are satisfied, therefore, that the error was cured by the court's instructions.

Proponent's final argument on appeal is that the trial court erroneously instructed the jury. We note that proponent failed to object to the instructions at trial. In general, absent a showing of manifest injustice, failure to object precludes appellate review. *Danaher v Partridge Creek Country Club,* 116 Mich App 305, 318; 323 NW2d 376 (1982); *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981), *lv den* 413 Mich 874 (1982). We have reviewed the trial court's instructions and have found no error.

Affirmed.