*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KERRY LYNN ZIELINSKI,

        Plaintiff-Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
June 11, 2026
3:38 PM

No. 371692
Wayne Circuit Court
LC No. 22-000435-NI

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

MALDONADO, J.

In this no-fault action brought by plaintiff, Kerry Lynn Zielinski, for recovery of personal protection insurance (PIP) benefits after an automobile accident, defendant, Auto-Owners Insurance Company, appeals as of right the May 20, 2024 final order and judgment. After a jury found that medical bills relating to plaintiff's neck surgery were owing and overdue to plaintiff, the trial court awarded plaintiff $11,797.65 in overdue allowable expense benefits, $1,547.65 in pre-judgment interest, $2,798.40 in penalty interest, $11,371.65 in taxable costs, and $288,090.00 in attorney's fees.

On appeal, defendant argues that it is entitled to a new trial because plaintiff's counsel erroneously referred to the drunkenness of the other driver in the subject accident, which prejudiced both the trial court and the jury. Defendant also argues that the trial court erred by awarding attorney fees to plaintiff under MCL 500.3148 because defendant's refusal to pay for the neck surgery was based on a legitimate factual dispute. Moreover, even if attorney fees were appropriate, defendant argues that plaintiff failed to establish that the hourly rate and expended hours were reasonable, particularly because plaintiff's counsel failed to keep contemporaneous records of their time. We affirm.

## I. BACKGROUND

On January 21, 2021, plaintiff was rear-ended by another driver, Charles E. Watkins, as she was stopped at a red light. The force of the collision pushed her car into the car in front of her, which was also stopped at the same red light. Plaintiff was transported by ambulance to the emergency room at Oakwood Southshore Hospital. The next day, plaintiff reported the accident

-1-

to defendant, her auto insurance company, claiming that she suffered a "slipped disc under her neck." Defendant's claim notes also indicate that plaintiff suffered "whiplash," as well as a concussion and other injuries. Shortly after the accident, plaintiff also contracted a life-threatening bacterial infection that took months to manage.

In addition to the infection and the injuries sustained in the accident, plaintiff also had a lengthy, complicated, pre-accident medical history—including 19 prior spinal surgeries. Dr. Ayman Tarabishy began treating plaintiff in 2019 for pain management, primarily related to her lumbar spine. Dr. Tarabishy described plaintiff as "a lot more fragile and susceptible" than someone with a healthy spine. As part of plaintiff's treatment, Dr. Tarabishy referred plaintiff to Dr. Christopher Elia for spinal surgery. Dr. Elia started treating plaintiff in December 2021 after the accident and after she recovered from the bacterial infection. Dr. Elia acknowledged that plaintiff had "a pretty extensive prior surgical history" and was treated for neck pain and cervical myelopathy[1] before the subject auto accident. However, according to Dr. Elia, the prior surgeon "did a pretty good job decompressing her spinal cord," so she "should have gotten better."

Regardless, Dr. Elia opined that when he began treating plaintiff in December 2021, her current neck pain and cervical myelopathy were related to the subject accident. Dr. Elia further opined that the surgery he performed in February 2022 was necessary to treat the neck injuries that plaintiff sustained in the subject accident. In October 2023, Dr. Elia performed another surgery for plaintiff, this time on her low back to correct a "pretty extensive deformity." He opined that the second surgery was also necessary to treat plaintiff's injury from the subject accident. Dr. Elia explained that if plaintiff had not needed surgery on her neck in February 2022, "she likely would not have developed those biomechanics" that led to the corrective surgery in October 2023.

Plaintiff filed the subject lawsuit in January 2022 claiming unpaid PIP benefits against defendant and negligence against Watkins. In April 2022, defendant received medical bills from Michigan Head and Spine Institute for the neck surgery performed by Dr. Elia. In July 2022, in a letter corresponding with Medicare, defendant acknowledged that plaintiff had injured her neck in the subject accident and was treated for that injury. Defendant sent a nearly identical letter to Medicare in September 2022. Subsequently, defendant engaged Dr. Steven Kalkanis to perform an independent medical examination (IME).[2] He did not actually examine plaintiff but rather engaged in a review of records related to her claim. In October 2022, after reviewing hundreds of pages of plaintiff's medical records, Dr. Kalkanis concluded that "[t]here is simply no evidence to suggest that [plaintiff] suffered from any anatomic, traumatic, conformational, or radiographic

---

[1] "Myelopathy is the medical term for spinal cord damage."

[2] We use the phrase "independent medical examination" because that is the phrase used by the parties to refer to the examination in question. However, in *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), we observed this "appellation is a euphemistic term of art" and, at least in the insurance context, "an IME involves obtaining a second opinion from a doctor who is entirely selected and paid for by an insurance company, rendering the 'independence' of the examination somewhat questionable."

change or injury to the brain or cervical, thoracic, or lumbar spine as a result of the January 2021 accident."

At some point, plaintiff also sent defendant the bill for her October 2023 back surgery performed by Dr. Elia at Spine and Brain Surgery Specialists, which apparently occurred after Dr. Elia left the Michigan Head and Spine Institute and opened his own practice. In November 2023, on the basis of Dr. Kalkanis' report and "the entire claim investigation and review of all materials gathered to date," defendant denied plaintiff's bills from both Michigan Head and Spine Institute and Spine and Brain Surgery Specialists.

Following the denial, the case proceeded to a two-day trial, during which the jury heard testimony from plaintiff and two claims adjusters from Auto-Owners.[3] The jury also heard the recorded deposition testimonies of Dr. Tarabishy, Dr. Elia, and Dr. Kalkanis. At the conclusion of the trial, the jury determined that plaintiff sustained an accidental bodily injury arising out of the operation of a motor vehicle. The jury also concluded that plaintiff's medical bill from Michigan Head and Spine Institute for neck surgery was reasonable and necessary to treat her injuries, i.e., an allowable expense, and that payment was overdue. However, the jury determined that plaintiff's bill for surgery on her low-back from Spine and Brain Surgery Specialists was not an allowable expense.

Plaintiff moved in the trial court for attorney fees. Defendant argued that plaintiff was not entitled to attorney fees because its denial of payment was reasonable, and even if fees were appropriate, plaintiff failed to properly support her fee claim. After a hearing on the motion, the trial court determined that fees were appropriate and that the reasonable hourly rate for the primary attorneys was $750.[4] The case proceeded to an evidentiary hearing to establish the reasonable amount of hours expended on the case. During the hearing, members of plaintiff's legal team testified regarding their work on the case, which was supported by their affidavits and spreadsheets reflecting time expended. The trial court struck a few hours as duplicative, but otherwise largely adopted plaintiff's claimed hours. As previously noted, the trial court then entered a judgment awarding plaintiff $11,797.65 in overdue allowable expense benefits, pre-judgment interest under MCL 600.6013, penalty interest under MCL 500.3142, taxable costs, and attorney fees under MCL 500.3148, for a total judgment of $315,605.35.

Defendant moved in the trial court for a new trial, claiming for the first time that plaintiff's counsel improperly told the jury that Watkins was drunk when he rear-ended plaintiff. Defendant argued that counsel's statements about Watkins's drunkenness "greatly prejudiced" defendant, "tainted the jury," and "denied [defendant] a fair trial." Plaintiff responded that defendant failed to preserve this issue by failing to make a timely objection during the trial, and even if such statements were made in error, the trial court cured any potential defect through its instructions to the jury. The trial court heard oral arguments and then denied defendant's motion.

---

[3] Plaintiff settled her claims against Watkins before trial.

[4] The trial court also established a $250 hourly rate for the junior attorney and a $100 hourly rate for the legal assistant.

This appeal followed.

## II. DEFENDANT'S REQUEST FOR NEW TRIAL

Defendant argues that plaintiff's counsel erroneously referred to Watkins's intoxication during closing arguments, which was not relevant to the issues at trial regarding allowable PIP expenses. As a result, counsel improperly invoked the passions and prejudice of the jury, as well as the trial court, requiring a new trial. We agree that the statements were erroneous but conclude that the error was harmless.

Evidentiary objections must be preserved through a timely objection made at trial, *Heshelman v Lombardi*, 183 Mich App 72, 83; 454 NW2d 603 (1990), that specifies the same ground for objection asserted on appeal. *Genna v Jackson*, 286 Mich App 413, 423; 781 NW2d 124 (2009). Likewise, to preserve a claim of attorney misconduct, a party must object and request a curative instruction or move for a mistrial. See *Van Every v Southeastern Michigan Transp Auth*, 142 Mich App 256, 267; 369 NW2d 875 (1985). Defendant did not timely object to plaintiff's closing argument or request curative instructions but rather raised this issue for the first time in a motion for new trial. Therefore, this issue is not preserved. See *Heshelman*, 183 Mich App at 83.

Generally, we review for abuse of discretion a trial court's decision regarding a motion for new trial. *Campbell v Human Servs Dep't*, 286 Mich App 230, 243; 780 NW2d 586 (2009). However, unpreserved claims of attorney misconduct in civil cases are also subject to review as follows:

> [T]he appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. [*Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982) (footnotes omitted).]

MCR 2.611(A)(1)(b) permits a trial court to grant a motion for a new trial if the prevailing party committed "misconduct," affecting the moving party's substantial rights.[5] "Where improper conduct by one or both parties influences the outcome of a trial, an appellate court may reverse although the appellant's attorney did not seek to cure the error." *Reetz*, 416 Mich at 102. However, the moving party must show that the misconduct rose to a level warranting relief—courts will not grant new trials for isolated improper comments or overzealous advocacy that was not unfairly prejudicial or designed to distract the jury from the issues. See *Estate of Carlsen by Carlsen v*

---

[5] See also MCR 2.613(A), which provides that "an error or defect in anything done . . . by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice."

*Southwestern Michigan Emergency Servs, PC*, 338 Mich App 678, 700; 980 NW2d 785 (2021). "An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996).

In this case, plaintiff made three remarks during her trial testimony that indicated Watkins was drunk—one during direct examination and two during cross-examination. Defendant did not object to any of this testimony when it was given. Later, in closing, plaintiff's counsel stated twice that plaintiff was "rear-ended at 45 miles an hour by a drunk driver." Defendant did not object to either statement or request curative instruction.

First, we must determine whether the comments of plaintiff's counsel constitute error. See *Reetz*, 416 Mich at 102. As a starting point, the jury was asked to resolve three issues: (1) whether plaintiff suffered accidental bodily injury as a result of the subject accident, (2) whether the medical services and treatment that she received from Michigan Head and Spine Institute and from Spine and Brain Surgery Specialists were reasonable and necessary as a result of her injuries (i.e, allowable expenses), (3) and whether the no-fault benefits to pay for the allowable expenses were overdue.

The fact that plaintiff was rear-ended and the speed at which she was hit are both relevant to whether she was injured in the car crash. However, the possible inebriation of the other driver was not relevant to any of the issues. Irrelevant evidence is not admissible. MRE 402. Accordingly, plaintiff's counsel erred when he referred to plaintiff's irrelevant, inadmissible testimony about Watkins being drunk. See *Matter of Estate of Ellis*, 143 Mich App 456, 461; 372 NW2d 592 (1985) (noting that "counsel is not allowed to refer to clearly inadmissible evidence").

We then must then determine whether the error was harmless or whether the error "played too large a part and may have denied [defendant] a fair trial." *Reetz*, 416 Mich at 102. The jury found that plaintiff sustained an accidental bodily injury arising out of the operation of a motor vehicle. The jury also concluded that plaintiff's medical bill from Michigan Head and Spine Institute was reasonable and necessary to treat her injuries, i.e., an allowable expense, and that payment was overdue. However, the jury determined that plaintiff's bill from Spine and Brain Surgery Specialists was not an allowable expense.

A review of the record indicates that the jury's verdict was supported by the evidence at trial and was not the result of prejudice. Plaintiff presented sufficient evidence that she injured her neck in the subject car accident, including the deposition testimony of two of her treating physicians, Dr. Tarabishy and Dr. Elia. Dr. Elia also testified that the bill from Michigan Head and Spine Institute for plaintiff's neck surgery in February 2022 was necessary to treat the neck injury sustained in the accident. Finally, when corresponding with Medicare, defendant acknowledged that plaintiff had injured her neck in the subject accident and was treated for that injury. Therefore, the jury had a basis for determining that plaintiff was injured in the subject crash and underwent surgery with Dr. Elia at Michigan Head and Spine Institute in February 2022 to help treat that injury.

Nevertheless, defendant argues that plaintiff's counsel's comments about Watkins's drunkenness infected the jury with bias, precluding a fair verdict. In support of this assertion,

-5-

defendant points to some comments that the trial court made in the post-judgment attorney-fee motion hearing. The comments were as follows:

> You know, I talked to the jury afterward and to a person the concern that they expressed to me that, my goodness, if I get rear-ended at 45 miles an hour by a drunk driver and this is how my insurance company is going to treat me, I'm scared. These folks were scared. That this is the decisionmaking (sic) that took place.

These comments do not support that the jury was fixated on Watkins's drunkenness. The trial court provided three characteristics of the accident: (1) Watkins rear-ended plaintiff, (2) Watkins was driving 45 miles an hour at the time of crash, and (3) Watkins was drunk at the time of the crash. Thus, the thrust of the comment was that plaintiff's accident was Watkins's fault. The jury verdict, which as discussed, was supported by the evidence at trial, clearly indicates that the jury was not so impassioned by *any* aspect of Watkins's fault to simply award plaintiff a sweeping victory. On the contrary, the verdict indicates that the jury *dispassionately* reviewed the evidence and determined that one medical bill was reasonable and related to the accident, and one was not. The record thus does not support that the jury was prejudiced against defendant or that the comments during trial that Watkins was drunk "played too large a part" in the jury's verdict. See *Reetz*, 416 Mich at 102.

Importantly, the trial court also gave several curative instructions that mitigated any prejudicial effect of the improper comments. See *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." (quotation marks and citation omitted)). Although defendant did not request curative instructions and the trial court did not address the statements about Watkins's drunkenness specifically, the trial court instructed the jury that "[s]ympathy must not influence [their] decision." Likewise, the jury was instructed to "carefully evaluate the evidence and resist any urge to reach a verdict that is influenced by bias against any party, witness or lawyer." The trial court further instructed the jury that, although defendant was a corporation, defendant was "entitled to the same fair and unprejudicial treatment as an individual." Finally, the trial court identified all the issues without any reference to who was at fault for the subject accident and instructed the jury that plaintiff bore burden of proof. These instructions were sufficient to cure the potentially prejudicial effect of plaintiff's counsel's comments about Watkins being drunk. See *id*.

Furthermore, the trial court's comment in the post-trial motion hearing was part of a lengthy colloquy, in which the trial court evaluated *all* aspects of the case, without any further reference to the jury's deliberations. The trial court explained that, although plaintiff was medically fragile prior to the subject car accident, defendant was obliged to "take [its] opposing client as [it] receive[s] them." Even if plaintiff "had 1000 surgeries before," she had subsequent surgeries that her doctors testified were "clearly related" to her accident. The trial court went on to critique the trial testimony of defendant's claims adjusters, describing them as "cavalier" in their handling of plaintiff's claim. The trial court also noted that it "literally begged" defense counsel to settle the case within the $50,000 policy cap. The trial court concluded by characterizing all of its statements as "dicta" and "editorial" before transitioning into its analysis of the merits of plaintiff's motion for attorney fees, without any additional reference to Watkins's inebriation or the jury deliberations. The trial court's assessment of the parties and case does not indicate bias

-6-

against defendant. Rather, these comments illustrate the overall weakness of defendant's position before and during the trial.

Similarly, the trial court's comments at the post-trial evidentiary hearing also do not reflect that the trial court was prejudiced by plaintiff's counsel's comments about Watkins's inebriation. In fact, during the evidentiary hearing, the trial court did not mention drunkenness or fault or the circumstances of the accident at all. The record simply does not support that plaintiff's counsel's isolated comments about Watkins being drunk were a "deliberate course of conduct aimed at preventing a fair and impartial trial," *Hunt*, 217 Mich App at 95, or that the comments actually had any such effect on the jury or the trial court. See *Reetz*, 416 Mich at 103. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial on the basis of plaintiff's counsel's alleged misconduct. See *Campbell*, 286 Mich App at 243.

## III. PLAINTIFF'S REQUEST FOR ATTORNEY FEES

Defendant raises several arguments regarding the trial court's award of attorney fees to plaintiff, none of which are availing.

### A. STANDARDS OF REVIEW

An award of attorney fees under MCL 500.3148(1) presents a mixed question of law and fact. *Abdulla v Progressive Southeastern Ins Co*, ____ Mich App ____, ____; ____ NW3d ____ (2024) (Docket Nos. 364797 and 364866); slip op at 4. Underlying questions of law are reviewed de novo, and underlying findings of fact are reviewed for clear error. *Id*. "There is clear error when there is no evidentiary support for the factual findings or where there is supporting evidence, but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Augustine v Allstate Ins Co*, 292 Mich App 408, 424-425; 807 NW2d 77 (2011) (quotation marks, citation, and brackets omitted).

That said, we review a trial court's ultimate decision to award attorney fees and the determination of the reasonableness of the fees for an abuse of discretion. *Id*. at 424. "[A]n abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. Likewise, "[a] trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

### B. UNREASONABLE DELAY

Defendant first argues that attorney fees were not appropriate because there was no unreasonable delay in payment. We disagree.

The no-fault act provides for a system of mandatory no-fault automobile insurance, which requires Michigan drivers to purchase PIP insurance. The no-fault act was intended to provide insured persons who have sustained injuries in automobile accidents with assured, adequate, and prompt compensation for certain economic losses. *Shavers v Attorney General*, 402 Mich 554, 578-579; 267 NW2d 72 (1978). To that end, the act provides for penalty interest and attorney fees when an insurer unreasonably refuses to make timely benefits payments. MCL 500.3142(2) and (4); MCL 500.3148(1). The penalty-interest and attorney-fees provisions create an "axiom" under the no-fault act that insurers "must pay PIP benefits to claimants promptly and sort out priority

-7-

and reimbursement issues later." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 519; 968 NW2d 482 (2021). "That axiom is actualized by the very real possibility that steep penalties will be assessed against an insurer that drags its feet in paying PIP benefits to claimants." *Id*.

Under the penalty-interest provision, benefits "are payable as loss accrues," MCL 500.3142(1), and benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Overdue payments are subject to a penalty of 12% interest paid to the beneficiary for the period in which benefits are overdue. MCL500.3142(4). "Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits." *Morales v State Farm Mutual Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008).

In turn, the attorney-fee provision provides:

> [A]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [MCL 500.3148(1).]

Thus, "MCL 500.3148(1) establishes two prerequisites for the award of attorney fees." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008). First, benefits must be overdue under MCL 500.3142(2). *Id*. "Second, in postjudgment proceedings, the trial court must find that the insurer 'unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Id*., quoting MCL 500.3148(1).

"If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second," and "[t]he insurer then bears the burden of justifying the refusal or delay." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690-691; 828 NW2d 400 (2012). "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Ross v Auto Club Group*, 481 Mich 1, 11; 748 Nw2d 552 (2008). A trial court "must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time." *Brown*, 298 Mich App at 691. "[A]n insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits." *Moore*, 482 Mich at 525. "[T]he determinative factor . . . is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Id*. at 522.

In this case, as noted, the jury determined that the payment of the Michigan Head and Spine Institute for the February 2022 neck surgery was overdue under MCL 500.3142(2). That is, defendant had reasonable proof of the fact and of the amount of loss sustained but still refused to pay the claim within 30 days. See MCL 500.3142(2). In light of this jury determination, the first prerequisite was established, and defendant must overcome the presumption that its refusal to pay that bill within 30 days was unreasonable. See *Brown*, 298 Mich App at 690-691. Defendant

argues that it carried this burden because neither the medical bill nor the associated medical records specified that the treatment was for an injury related to the subject accident, so defendant's denial was based on a legitimate factual uncertainty. Defendant further contends that its factual uncertainty is justified by Dr. Kalkanis' subsequent determination that plaintiff did not suffer any spinal injury as a result of the subject accident. This is not persuasive.

Defendant correctly notes that plaintiff had a history of neck pain and spinal problems that existed before the subject accident. Certainly, plaintiff's medical history could create legitimate factual uncertainty regarding whether her February 2022 neck surgery was for a new injury related to the subject accident or for a pre-existing condition.

However, although defendant argues that the bill did not indicate a relationship to the accident, in July 2022, when corresponding with Medicare, defendant acknowledged that plaintiff had injured her neck in the subject accident and was treated for that injury. Defendant also indicated that it had the corresponding medical documentation of the same. Accordingly, sometime between when defendant received the neck surgery bill in April and sent the letter to Medicare in July, defendant concluded that the accident and neck injury were related. Thus, the trial court did not abuse its discretion when it determined that defendant's refusal to pay was unreasonable. See *Brown*, 298 Mich App at 691.

Unfortunately for defendant, Dr. Kalkanis' record review in October 2022 does not change this result. Defendant arranged for Dr. Kalkanis to perform a review of records six months after defendant received the bill for the neck surgery and three months after defendant wrote to Medicare that plaintiff had injured her neck in the accident. As a result of his record review, Dr. Kalkanis opined that plaintiff had, at worst, suffered soft tissue injuries in the subject crash. Although an IME—or in this case, an independent record review—is a legitimate investigatory tool for an insurer, MCL 500.3151, the relevant circumstances are those that exist at the time that the bill payment is due. See *Brown*, 298 Mich App at 691. In this case, the record review was conducted three months *after* defendant acknowledged the relatedness between plaintiff's neck injury and the subject crash. Accordingly, the record review does not retroactively create a factual uncertainty that clearly did not exist as early as July 2022. See *id*.

Accordingly, defendant has not met its burden of justifying the refusal to make the requested payments or to otherwise rebut the presumption that its failure to pay these benefits when they were initially requested was unreasonable. See *id*. at 690-691. Therefore, the trial court did not abuse its discretion by concluding that defendant failed to rebut the presumption of unreasonableness and awarding plaintiff attorney fees pursuant to MCL 500.3148(1).

## C. REASONABLE HOURLY RATE

Defendant next argues that even if attorney fees were appropriate, the hourly rate adopted by the trial court was inherently unreasonable. We disagree.

In *Pirgu*, 499 Mich at 281, our Supreme Court outlined the three-step process for a trial court to determine a reasonable attorney fee award under MCL 500.3148(1). First, the trial court "must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services." *Id*. Second, "[t]he trial court must then multiply that rate by the

reasonable number of hours expended in the case to arrive at a baseline figure." *Id*. Third, the trial court must consider a synthesized list of factors to determine whether an adjustment of the baseline fee is appropriate. *Id*.[6]

The *Pirgu* factors are as follows:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Id*. at 282.]

"These factors are not exclusive, and the trial court may consider any additional relevant factors." *Id*. "In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*. "[I]n determining the baseline fee in accordance with *Pirgu*, the court is to include all attorney time that was relevant to recovery of the overdue benefit, even if that time was also relevant to other aspects of the case." *Komendat v Gifford*, 334 Mich App 138, 158; 964 NW2d 75 (2020). However, "[a]ttorney time that was related only to other aspects of the action, and did not bear on the benefits unreasonably withheld, should be excluded from the baseline." *Id*.

In this case, after determining that attorney fees were appropriate under MCL 500.3148, the trial court's first mandate was to establish a reasonable hourly rate. See *Pirgu*, 499 Mich at 281. As part of this first step, "trial courts have routinely relied on data contained in surveys such as the Economics of the Law Practice [(ELP)] Surveys that are published by the State Bar of Michigan." *Heaton v Benton Const Co*, 286 Mich App 528, 543; 780 NW2d 618 (2009), quoting *Smith v Khouri*, 481 Mich 519, 530; 751 NW2d 472 (2008). To that end, plaintiff's counsel requested an hourly rate of $900, which was in the 95th percentile of the ELP survey for plaintiff-side personal injury attorneys. The hourly rate in the 75th percentile was $500. The trial court

---

[6] The list is synthesized from factors in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), as well as MRPC 1.5(a), which prohibits lawyers from charging "excessive fees."

considered this range, as well as the hourly rates in Macomb County, where the firm was located, which were $375 in the 75th percentile and $497 in the 95th percentile. While considering which percentile would be appropriate for this case, the trial court acknowledged the complexity and volume of plaintiff's treatment and noted that "very few" attorneys would try a case in which there were 19 pre-incident spine surgeries and a $50,000 insurance cap. Finally, the trial court also considered that the experts who testified all charged at least $1,000 for an hourly rate. Therefore, the trial court determined that "a rate of $750 is an appropriate and reasonable fee" for the legal services of the primary attorneys.

To shore up this rate, the trial court considered the *Pirgu* factors.[7] Regarding factor one—the experience, reputation, and ability of the lawyers—the trial court reflected that based on the court's own experience with plaintiff's counsel, they had "always practiced with integrity, with passion, with phenomenal competence, and they get results." The trial court also took judicial notice of the firm's "successes in the last year" and characterized plaintiff's counsel as "good and decent people" and "exceptional trial lawyers." The trial court concluded its analysis by expressing its respect for plaintiff's counsel, stating that they "certainly are entitled to be compensated at the level of $750." There is nothing in the record to refute the trial court's own impressions of plaintiff's counsel's experience, reputation, and ability during the many years that they litigated in the trial court's own courtroom.

Regarding factor two—the difficulty of the case—the trial court determined that "although it was a two-day case, it was highly complex from a factual, medical and legal standpoint in terms of the number of strategies and the defenses and such that were put in the way of the Plaintiff team." The trial court also found that plaintiff's counsel "had to master significant areas of medicine" and that "this case required . . . an [in]ordinate amount of time and preparation and expertise that was displayed seamlessly, both by way of deposition and certainly at trial by way of [plaintiff's counsel's] presentation." The record supports this assessment. On appeal, defendant concedes that plaintiff had "a lengthy pre-accident medical history, including at least 116 surgeries since 2009 and no less than 19 spinal surgeries." Defendant also acknowledged that both of plaintiff's testifying physicians described her condition as "complicated due to her extensive surgery history." Accordingly, the trial court did not clearly err by weighing this factor in favor of the reasonableness of the hourly rate.

As to factor three—the results obtained—the trial court determined that plaintiff's counsel achieved "a tremendous result giv[en] the facts and difficulty of the case." The jury found in favor of plaintiff regarding the Michigan Head and Spine Institute bill, which totaled over $72,000. The trial court noted that the case evaluation award, on the other hand, was only $10,000.[8] In light of the favorable jury verdict on all questions but the relatedness of the October 2023 surgery, as well as the fact that the recoverable amount far exceeded the evaluation award amount, this assessment

---

[7] The trial court credited these factors to *Smith*, 481 Mich at 528-529, but *Smith* predates *Pirgu*, which discussed and then subsumed the factors discussed in *Smith*.

[8] The case evaluation award results summary indicates that the award was $20,000, ostensibly $10,000 for no-fault benefits and $10,000 for pain and suffering.

-11-

of the reasonableness of the fee is not clearly erroneous.  See *Augustine*, 292 Mich App at 424-425.

Regarding factor four—the expenses incurred—the trial court made the following remarks:

And the Court does believe that given the immense amount of resources, both time and money to take this case to trial, [plaintiff's counsel] certainly earned every penny of $750 squarely within, perhaps within the upward limits of the PIP, but certainly squarely within the more appropriate denomination of this case as a personal injury case in light of all of the complexities and manner in which this case was conducted.

The trial court did not elaborate on the "immense" resources that plaintiff's counsel incurred, but plaintiff's counsel presented an invoice of "reimbursable expenses" as part of its motion for attorney fees.  According to the invoice, plaintiff's counsel incurred $12,633.08 in expenses.  On appeal, defendant does not contest the trial court's assessment of this factor.

The trial court weighed factor five—the professional relationship with the client—in favor of plaintiff's counsel.  In particular, the trial court expressed that counsel "certainly has a close relationship over two years with this [p]laintiff" that "certainly is at risk when the case is taken to trial."  The trial court further determined that "[t]his risk has real value and must be reflected in the amount of the fees."  On appeal, defendant posits that a two-year client relationship is typical of cases that go to trial, such that weighing this factor in favor of plaintiff's counsel is clearly erroneous.  However, defendant does not cite any authority for its conclusion that such a "typical" duration would not weigh in favor of the reasonableness of the hourly rate used by the trial court.

Factor six assesses the impact of the case on other employment opportunities for counsel. The trial court stated that it was "well aware" that plaintiff's counsel was "all in" on plaintiff's case, which the court characterized as "all encompassing." The trial court further stated that "[c]ertainly other work . . . went either undone or other cases . . . were left by the wayside that could have been taken up, but for [plaintiff's counsel] litigating a 50,000 cap case." These details factored into the court's determination that an hourly rate of $750 was reasonable.  In light of the prior discussion about the complexities of the case, this characterization is not clearly in error.

Regarding factor seven—the time limitations imposed by the client or circumstances—the trial court "[took] notice that this case was adjourned a couple of prior times." As a result, "the prep time and then downtime and then prep time again," weighed in favor of the reasonableness of the hourly rate.  Indeed, the Register of Action reflects two trial adjournments, such that the trial court did not clearly err in its assessment of factor seven, either.

Finally, the trial court considered factor eight—whether the fee was fixed or contingent. On this point, the trial court acknowledged the contingent fee arrangement and succinctly stated: "[W]e'll go back to that idea of risk.  When you have that risk involved, it has to factor into the analysis of this hourly rate."  Defendant offers no rebuttal to this determination.

In sum, the trial court considered the ELP survey and selected an hourly rate between the 75th and 95th percentile of personal injury attorneys.  To justify that particular rate, the trial court dutifully marched through the relevant factors, weaving in the court's own experience regarding

the case and counsel. In light of the foregoing synopsis of the factors, the trial court's ultimate determination that plaintiff's counsel was entitled to an hourly rate of $750 was not an abuse of discretion. See *Augustine*, 292 Mich App at 424-425.

## D. EXPENDED HOURS

Defendant also argues that plaintiff failed to present sufficient evidence that the fees were actually incurred and that plaintiff's counsel was required to keep contemporaneous time records, rather than compiling expended hours later when plaintiff sought attorney fees. We disagree.

For this issue, the trial court held an evidentiary hearing in which plaintiff's counsel presented affidavits, testimony, invoices, and spreadsheets regarding the hours expended by plaintiff's counsel. Defendant argues on appeal that plaintiff's multi-person legal team led to "duplicative" hours. On that point, the trial court noted that trials are "collaborative" and represent a "team effort," such that it is not unusual to have some duplication. Nevertheless, at the conclusion of the hearing, the trial court did strike certain hours as duplicative, as well as several hours incurred because of the "chattiness" of both plaintiff and counsel's legal assistant. Finally, the trial court struck all hours relating to the claims against Watkins, which were settled before trial and were "not part of this particular PIP litigation." Although defendant generally characterizes plaintiff's billing as "contradictory, unsupported, and excessive," defendant has not identified anything specific that would require vacating the award or even reducing it.

Finally, defendant contends that it was unacceptable for plaintiff's counsel to compile its expended hours after the trial concluded. According to defendant, time records of expended hours must be kept contemporaneously. In support of this assertion, defendant relies on *Augustine*, 292 Mich App at 408. In that case, this Court had previously remanded an appeal from an attorney-fee award in favor of the plaintiff for the trial court to follow the analytical framework set forth by our Supreme Court in *Smith*, 481 Mich at 528, which has since been incorporated into *Pirgu*, 499 Mich at 281-282. Following remand, this Court concluded that the trial court's determination of the number of hours expended was not subject to meaningful review because of "the meager state of the record." *Id*. at 432. Even though the plaintiff sought attorney fees in her complaint from the outset of the litigation, she "did not demonstrate by a document, an example, or with specific testimony that a billable item was performed in the amount of time listed or, for that matter, even completed." *Id*. Accordingly, *Augustine* supports the proposition that the fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness. *Id*. at 432-434. But nothing in *Augustine*—or any other case this Court is aware of—requires contemporaneous timekeeping. Therefore, defendant's argument does not warrant relief.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Mariam S. Bazzi
/s/ Michelle M. Rick

-13-